UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) - DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 286, filed November 22, 2021)

## I.     INTRODUCTION

Plaintiffs MAO-MSO Recovery II, LLC, MSP Recovery, LLC, and MSPA Claims 1, LLC filed this action on March 31, 2017, against various corporate entities within the Farmers Insurance Group of Companies. Dkt. 1. This case arises out of defendants' alleged failure to reimburse Medicare Advantage Organizations ("MAOs") for medical expenses incurred treating Medicare beneficiaries injured in automobile accidents. Plaintiffs MSP Recovery Claims, Series LLC ("MSPRC") and MSPA Claims 1, LLC (collectively, "plaintiffs") filed the operative fourth amended complaint ("FAC") against defendants Farmers Insurance Exchange, Illinois Farmers Insurance Company, Farmers Insurance of Columbus, Inc., 21st Century Centennial Insurance Company, Mid-Century Insurance Company, Foremost Property and Casualty Insurance Company, 21st Century North America Insurance Company, 21st Century Indemnity Insurance Company, 21st Century Preferred Insurance Company, Fire Insurance Exchange, Foremost Insurance Company Grand Rapids, Michigan, and Farmers New Century Insurance Company (collectively, "defendants") on December 29, 2020. Dkt. 269 ("FAC"). The FAC alleges that plaintiffs are assignees of numerous MAOs and asserts two claims for relief: (1) double damages pursuant to the Medicare Secondary Payer ("MSP") provisions of the Medicare Act, 42 U.S.C. § 1395y(b) et seq; and (2) direct right of recovery pursuant to 42 C.F.R. § 411.24(e) for breach of contract. FAC ¶¶ 113-133. Plaintiffs contend that (1) defendants offer automobile insurance policies that contain no-fault coverages and/or medical payments ("Med Pay") coverage for any automobile accident-related medical expenses; (2) these policies provide primary coverage for medical bills incurred as a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

result of an automobile accident; (3) plaintiffs provided Medicare benefits to Medicare-eligible beneficiaries enrolled under the Medicare Advantage program when these beneficiaries were simultaneously insured by defendants, whose no-fault insurance coverage made them the primary payers for these expenses; and (4) defendants have failed to reimburse plaintiffs "for those accident-related medical expenses paid for by the Plaintiffs' assignors and all other MAOs/MA Plans that should have been paid, in the first instance, by Defendants under the Medicare Secondary Payer provisions." Id. ¶¶ 3-5.

Plaintiffs are collections agencies that allege that they are the assignees of numerous MAOs and related "first tier" and "downstream" entities such as Management Services Organizations ("MSOs") and Independent Practice Associations ("IPAs") that deliver Medicare benefits under Medicare Advantage ("MA") Plans.[1] Id. ¶¶ 60-62. Pursuant to a series of assignment agreements described in the FAC, these entities have allegedly assigned plaintiffs: "all legal rights of recovery and reimbursement for health care services and Medicare benefits provided by health care organizations that administer Medicare benefits for beneficiaries under Medicare." Id. ¶ 64.

Plaintiffs allege that numerous Medicare beneficiaries injured in automobile accidents were both enrolled in MA Plans administered by MAOs and carried no-fault insurance policies issued by defendants that provided coverage for medical expenses related to injuries sustained in those automobile accidents. Id. ¶ 93. Plaintiffs allege that defendants were required under the MSP to make primary payment for the beneficiaries'

---

[1] MSOs are organizations owned by a group of physicians, a physician–hospital joint venture, or investors in conjunction with physicians. MSOs provide practice management and administrative support services to individual physicians and group practices. An IPA is an association of independent physicians, or other organization that contracts with independent physicians, and provides services to managed care organizations. An Accountable Care Organization ("ACO") is a group of doctors, hospitals, and other health care providers, which come together voluntarily to give coordinated care to their Medicare patients. FAC at 17 n. 11. These "first-tier" or "downstream" entities contract with MAOs to provide certain services for Medicare beneficiaries. See 42 C.F.R. § 422.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

medical expenses but failed to pay for those expenses or reimburse the MAOs. Id. ¶¶ 94-96.

There have been numerous similar lawsuits filed throughout the country. See MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co., No. 17-22539-CIV, 2018 WL 3654779, at *1 n. 2 (S.D. Fla. Aug. 1, 2018) (collecting cases). There is also a related case currently pending before this Court. See MAO-MSO Recovery II, LLC et al v. The Farmers Insurance Exchange et al, No. 2:17-cv-02559-CAS-PLA (the "Settlement Case").

On September 6, 2017, defendants moved to dismiss the first amended complaint for lack of standing and failure to state a claim upon which relief can be granted. Dkt. 54. The Court granted the motion on November 20, 2017. Dkt. 76. Although the first amended complaint generally alleged that plaintiffs had valid assignment agreements with numerous MAOs, plaintiffs had failed to allege the identity of the assignors whose reimbursement rights they claimed to own, the dates of the assignments, or the essential terms of those assignments. Id. at 12. Accordingly, the Court concluded that the first amended complaint lacked sufficient factual allegations to demonstrate that the alleged assignments were valid. Id. Additionally, although the first amended complaint included representative allegations regarding four Medicare beneficiaries, plaintiffs did not identify which assignors were involved and failed to trace any injury suffered by the assignors to the conduct of any single defendant. Id. at 11. Rather, the first amended complaint included only blanket allegations against all defendants. Id. The Court accordingly dismissed the action for lack of standing. Id. at 11-13.

On December 11, 2017, plaintiffs filed their second amended complaint ("SAC"). Dkt. 78. The SAC listed and briefly described assignment agreements between plaintiffs and 78 different MAOs, MSOs, IPAs, and related entities. Id. ¶¶ 64-142. On May 7, 2018, the Court granted defendants' motion to dismiss the SAC with leave to amend. Dkt. 97. The Court found that the SAC included sufficient allegations to demonstrate valid assignment agreements because the pleadings identified the alleged assignors and the essential terms of the assignments. Id. at 14. The Court also found the representative facts regarding four Medicare beneficiaries "generally sufficient" to demonstrate that the respective assignors suffered an injury-in-fact. Id. at 13. However, the Court concluded that the SAC still failed to satisfy Article III's traceability requirement because there was nothing in the pleadings tying any claim by one or more of the assignors to any specific

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

named defendant. Id. at 16.  The Court accordingly granted the motion to dismiss with
leave to amend.  Id. at 19.

On May 29, 2018, plaintiffs filed their third amended complaint ("TAC").  Dkt. 98.
On July 9, 2018, defendants filed a motion to dismiss the TAC and separate misjoined
defendants.  Dkt. 140.  Defendants moved to dismiss all claims against Security National
Insurance Company, Bristol West Insurance Company, and Bristol West Preferred
Insurance Company pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  Dkt. 140
at 2-9.  The Court granted this motion, thereby dismissing these defendants from the case.
Dkt. 147.

Defendants also (1) moved to dismiss sixteen of the seventeen defendants for
improper venue pursuant to Rule 12(b)(3); (2) moved to sever the claims against each
defendant on the grounds that they were improperly joined; (3) moved to dismiss all
claims for lack of standing; and (4) moved to dismiss the action pursuant to Rule 12(b)(6)
on the ground that plaintiffs failed to allege facts sufficient to state a claim under 42
U.S.C. § 1395y(b)(3)(A).  Dkt. 140.  The Court denied these motions.  Dkt. 147.  On
September 4, 2018, the remaining defendants filed their answer to the TAC.  Dkt. 148.

On December 29, 2020, plaintiffs filed the FAC.  Dkt. 269.  In the FAC, which
added Foremost Insurance Company Grand Rapids, Michigan as a defendant, plaintiffs
assert the same legal claims for relief as in prior complaints: (1) double damages pursuant
to Medicare Secondary Payer private cause of action, 42 U.S.C. § 1395y(b)(3)(A); and
(2) breach of contract under plaintiffs' direct right of recovery pursuant to 42 C.F.R. §
411.24(e).  FAC ¶¶ 113-133.  On March 8, 2021, defendants filed their answer to the
FAC.  Dkt. 273.

On November 22, 2021, defendants filed a motion for summary judgment or
partial summary judgment.  Dkt. 286-1 ("Mot.").  Defendants also filed a statement of
uncontroverted facts and conclusions of law.  Dkt. 286-2 ("SUF").  On April 11, 2022,
plaintiffs submitted their opposition to defendants' motion for summary judgment.  Dkt.
315 ("Opp.").  Plaintiffs also submitted a statement of genuine disputes of material fact.
Dkt. 316 ("GDF").  On April 25, 2022, defendants submitted their reply.  Dkt. 336
("Reply").

On November 23, 2021, plaintiffs filed a motion for class certification.  Dkt. 292
("CC Mot.").  On April 11, 2022, defendants submitted their opposition to plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

motion for class certification. Dkt. 310 ("CC Opp."). On April 25, 2022, plaintiffs submitted their reply.[2] Dkt. 335 ("CC Reply").[3]

The Court held a hearing on May 9, 2022. On May 10, 2022, plaintiffs moved for leave to file a supplemental brief in opposition to defendants' motion for summary judgment. Dkt. 352. On May 11, 2022, the Court granted plaintiffs' motion for leave to file a supplemental brief, and granted defendants leave to file an optional response. Dkt. 354. On May 16, 2022, plaintiffs filed their supplemental brief. Dkt. 355 ("Plfs' Supp."). On May 20, 2022, defendants filed their response to plaintiffs' supplemental brief. Dkt. 356 ("Defs' Supp.").

Having carefully considered the parties arguments, the Court finds and concludes as follows.

---

[2] On May 5, 2022, plaintiffs filed three documents in support of their opposition to defendants' motion for summary judgment. See Dkts. 344-346. Although these documents were untimely, the Court reviewed them, and determined that neither MSP's Purchase and Sale and Assignment Agreement with SummaCare Inc. nor the two legal briefs from other cases, which address defendants' pre-suit notice requirement argument, are relevant to the Court's grounds for granting summary judgment in this case. Likewise, the Court reviewed the declaration of Carlos Manalansan, Vice President and Deputy General Counsel of Emblem Health, Inc., which plaintiffs filed on May 8, 2022, and found that Manalansan's declaration is not relevant to the Court's reasons for granting summary judgment. See Dkt. 349-1.

[3] Given that the Court **GRANTS** defendants' motion for summary judgment for the reasons described herein, plaintiffs' motion for class certification is **DENIED AS MOOT**. See Saeger v. Pac. Life Ins. Co., 305 F. App'x 492, 493 (9th Cir. 2008) (affirming denial of class certification as moot following the grant of summary judgment); see also Taylor v. Waddell & Reed, Inc., No. 09cv2909 AJB (WVG), 2012 WL 10669, at *5 (S.D. Cal. Jan. 3, 2012) ("Because the Court grants the motions for partial summary judgment . . . the Court therefore denies as moot Plaintiffs' motion for conditional class certification.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

## II.   STATUTORY BACKGROUND

Congress enacted the Medicare Act in 1965 to establish a health insurance program to benefit the elderly and disabled. See Social Security Amendments of 1965, Pub. L. No. 89-97, 79, Stat. 286 (codified as amended at 42 U.S.C. §§ 1395 to 1395kkk-1). The Medicare Act consists of five parts: Part A, Part B, Part C, Part D and Part E. Parts A and B regulate the traditional fee-for-service Medicare program administered by the Centers for Medicare & Medicaid Services ("CMS"). See 42 U.S.C. §§ 1395c to 1395i-5; §§ 1395-j to 1395-w. As described below, Part C is the Medicare Advantage program pursuant to which Medicare beneficiaries may elect to rely on private insurers, i.e. Medicare Assistance Organizations, or "MAOs," to receive their Medicare benefits. See 42 U.S.C. §§ 1395w-21 to w-28. Part D provides for prescription drug coverage, and Part E contains generally applicable definitions and exclusions. One such exclusion is the MSP provisions of the Act. See 42 U.S.C. § 1395(y)b).

In 1980, Congress passed the MSP provisions to contain rising Medicare costs. See Zinman v. Shalala, 76 F.3d 841, 843 (9th Cir. 1995). Before the MSP's passage, Medicare often acted as a primary insurer—that is, Medicare paid for its enrollees' medical expenses even if there was overlapping insurance coverage or when a third party had an obligation to pay for the expenses. The MSP makes Medicare a "secondary payer" and shifts responsibility for medical payments to other group health plans, workers' compensation, as well as no-fault and liability insurers, which are considered "primary plans." 42 U.S.C. § 1395y(b)(2). The MSP prohibits Medicare from paying for items or services if "payment has been made or can reasonably be expected to be made" by a primary payer. Id. § 1395y(b)(2)(A)(ii).

If a primary payer "has not made or cannot reasonably be expected to make payment with respect to the item or service promptly," Medicare is authorized to make a "conditional payment." Id. § 1395y(b)(2)(B)(i). However, since Medicare remains the secondary payer, the primary payer must then reimburse Medicare for all conditional payments "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." Id. § 1395y(b)(2)(B)(ii). This responsibility may be demonstrated by "a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | Date | May 25, 2022 |
|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | |

To facilitate recovery of these conditional payments, the MSP provides for a right of action by the United States, for double damages, against "any or all entities that are or were required or responsible" to make payment. Id. § 1395y(b)(2)(B)(iii). In addition to the right of action by the United States, Congress in 1986 established "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)." Id. U.S.C. § 1395y(b)(3)(A). "The private cause of action allows Medicare beneficiaries and healthcare providers to recover medical expenses from primary plans." Parra v. PacifiCare of Arizona, Inc., 715 F.3d 1146, 1152 (9th Cir. 2013).

In 1997, Congress enacted Medicare Part C, now known as the Medicare Advantage ("MA") program. 42 U.S.C. § 1395w–21 to w–28. Part C allows eligible participants to opt out of traditional Medicare and instead obtain benefits through MA Plans administered by MAOs, which are private, for-profit insurers that operate under contract with the Centers for Medicare & Medicaid Services ("CMS") and receive a fixed payment for each enrollee. If the cost of providing benefits to these enrollees exceeds the fixed payment, the MAO bears the loss. However, if the cost of care is less than the fixed payment, the MAO keeps the difference as profit. MAOs are thus incentivized to provide services more efficiently than traditional fee-for-service Medicare. See H.R. Rep. No. 105–149, at 1251 (1997) (Part C is intended to "allow beneficiaries to have access to a wide array of private health plan choices in addition to traditional fee-for-service Medicare . . . . [and] enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options.").

Part C also includes a secondary payer provision that authorizes an MAO to charge a primary payer for medical expenses paid on behalf of an enrollee. See 42 U.S.C. § 1395w–22(a)(4). For each MA plan, the MAO "must" "[i]dentify payers that are primary to Medicare," "[i]dentify the amounts payable by those payers," and "coordinate its benefits to Medicare enrollees with the benefits of the primary payers." 42 C.F.R. §422.108(b).

Although the statute does not expressly state that an MAO can avail itself of the MSP private cause of action under § 1395y(b)(3)(A), CMS regulations state that an "[MAO] will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | Date | May 25, 2022 |
|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | |

D of part 411 of this chapter." 42 C.F.R. § 422.108(f). In addition, both the Eleventh and Third Circuits have held that an MAO may assert claims under the MSP private cause of action in order to recover conditional payments it made on behalf of its enrollees. See MSP Recovery, LLC v. Allstate Ins. Co., 835 F.3d 1351, 1361 (11th Cir. 2016); In re Avandia Mktg., Sales Practices, & Prods. Liab. Litig., 685 F.3d 353, 367 (3d Cir. 2012). Finally, only one circuit, the Eleventh Circuit, has addressed whether MAO subcontractors may sue under the MSP Act. The Eleventh Circuit held that subcontractors of MAOs are not automatically precluded from suing under the MSP Act, stating: "downstream actors that have made conditional payments in an MAO's stead or that have reimbursed an MAO for its conditional payment can bring suit for double damages against the primary payer." MSP Recovery Claims v. ACE Am. Ins. Co., 974 F.3d 1305, 1316 (11th Cir. 2020).

## III.    FACTUAL BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.

### A.    Introduction

Plaintiffs assert 118 distinct, individual claims in their Fourth Amended Complaint in support of their Count I for Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A) and Count II for Direct Right of Recovery Pursuant to 42 C.F.R. 411.24(e) for Breach of Contract. SUF No. 2. However, in their opposition, plaintiffs state that they "continue[] to prosecute 96 claims . . . [t]he balance are withdrawn." Opp. at 15 n. 7; see also Dkt. 314-16 (Declaration of MSP Recovery, LLC's Chief Information Officer Christopher Miranda Jr. ("Miranda Decl.")) ¶ 43. As a result, there is no remaining claim in this action that was alleged in plaintiffs' original complaint.[4]

---

[4] Courts across the country have expressed frustration with plaintiffs' approach to litigating these claims. See MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co., No. 6:19-CV-00211 (MAD/TWD), 2019 WL 4222654, at *6 (N.D.N.Y. Sept. 5, 2019) ("Plaintiffs' strategy, it appears, is to throw their allegations into as many federal courts as possible and see what sticks. In each of these cases, Plaintiffs file deficient complaints, rely on courts to point out the problems, and then repeatedly amend

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

Plaintiffs submit as evidence spreadsheets created by plaintiffs or their counsel that contain certain data plaintiffs state they use to identify assignors and enrollees, and codes for alleged types of treatment and diagnoses, service dates, and numbers for the dollar amounts the assignors supposedly paid (either to a provider or from an MAO-subcontractor to an MAO). SUF No. 3. Plaintiffs state they compile information from multiple sources to create the spreadsheets. Id.

Plaintiffs added 116 of the 118 claims to this action when they filed their Fourth Amended Complaint on December 29, 2020. SUF No. 20. One hundred and fifteen of these claims were reported to CMS by the applicable defendant more than three years prior to the date the claims were added to this case. Id. No. 21.

### B. Evidentiary Issues

Defendants note that "Plaintiffs have none of the bills their assignors supposedly received, have no copies of actual payments their assignors supposedly made, and none of the assignors' accounting ledgers or similar documents showing that any payments were made, to whom, or the amounts." SUF No. 4. In response, plaintiffs claim that medical providers are required to bill, and health plans are required to pay, through electronic transmissions. GDF No. 4. As a result, they argue, any evidence of bills, payments, or accounting ledgers would be found in electronic data, i.e., the Assignor Data. Id.

Defendants also claim that "Plaintiffs have no medical documentation (or any documentation other than the data points in the spreadsheets) showing that the payments they claim their assignors made, for which Plaintiffs seek damages, were for treatments for injuries sustained in accidents that were insured under the Defendants' policies; and, many of the claim lines in Plaintiffs' Initial Disclosures spreadsheets state, in Plaintiffs' text descriptions within the spreadsheets, they are for medical treatments including flu

---

their pleadings until they get it right. . . . Plaintiffs' tactics are a flagrant abuse of the legal system. A pleading is not meant to be a means by which a party can discover if they actually have a case."); see also MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co., 994 F.3d 869, 871 (7th Cir. 2021) ("This lawsuit mirrors scores like it filed in federal courts throughout the country that have all the earmarks of abusive litigation and indeed have drawn intense criticism from many a federal judge.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | Date | May 25, 2022 |
|----------|------------------------|------|--------------|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | |

shots, glaucoma treatments, diabetes treatments, malnutrition evaluations, skin melanoma, fibromyalgia, and other items that are disconnected and not resulting from any injury sustained in the alleged auto accidents." SUF No. 5. In response, plaintiffs claim that defendants "either purposefully ignore[] how diagnosis codes are used in medical claims' data or [have] intentionally chosen to isolate sections of the data provided to mischaracterize the information produced within [plaintiffs'] Initial Disclosures." GDF No. 5.

Defendants also point out that "Plaintiffs do not have evidence that any of the 118 people were actually enrolled with any of the assignors in Medicare plans, or specifically enrolled with any of the assignors at all, or in Medicare plans as opposed to any other plans, such as Medicaid or non-Medicare health insurance plans, that the assignors offer." SUF No. 8. In response, plaintiffs point to the declaration of their Chief Information Officer, Christopher Miranda Jr., wherein Miranda states that "[t]he electronic business records corresponding to those unreimbursed secondary payments are attached as Exhibits 1 to 18" and "[t]he exhibits also reflect that the Medicare beneficiaries were enrolled in Medicare Advantage plans at the times those payments were rendered." Miranda Decl. ¶¶ 44-45. However, in reviewing Exhibits 1-18 to the Miranda declaration, the Court is unable to confirm from the declaration or the exhibits that the exhibits in fact "reflect that the Medicare beneficiaries were enrolled in Medicare Advantage plans at the times those payments were rendered." Miranda, who is plaintiffs' Chief Information Officer and custodian of records, "is an attorney who previously worked for one of plaintiffs' counsel law firms and has no medical, Medicare, claims or insurance experience prior to starting employment with MSP Recovery, LLC in 2017." SUF No. 10.

Additionally, defendants contend that "Plaintiffs have not produced the actual data they allege their affiliate MSP Recovery received from the assignors." SUF No. 11. While plaintiffs respond that defendants' contention is "false," and that "[t]he Assignor Data was provided to Defendants on June 25, 2021," plaintiffs cite only to paragraph two of the declaration of their counsel, David L. DaPonte, and not to any assignor data. See GDF No. 11.

Plaintiffs seek reimbursement based on the allegation that defendants failed to provide for primary payment or appropriate reimbursement. SUF No. 17. However, "Plaintiffs have no evidence any Defendant failed to pay any bill it received from a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|----------|------------------------|---|------|--------------|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

medical provider that it was obligated to pay (which an alleged assignor ultimately paid), or that any MAO or MAO-subcontractor ever sought any specific reimbursement and the Defendant failed to comply." SUF No. 18. In response, plaintiffs contend that the MSP Act "does not require MSP to prove that Defendants affirmatively 'failed' to pay a 'bill it received' or that any MAO or downstream entity 'sought any specific reimbursement' from Defendant prior to filing suit." GDF No. 18.

Finally, defendants contend that "Plaintiffs have no evidence and are unable to describe, attest to or in any way demonstrate the initial link in the alleged data chain upon which they rely—the alleged assignors' creation and maintenance of the assignors' data to begin with." SUF No. 19. In response, plaintiffs state that "although not required, [plaintiffs have] provided examples from assignors that render this statement disputed." GDF No. 19. However, the assignor declarations provided by plaintiff, which attach spreadsheets similar to the spreadsheets attached to the Miranda declaration, fail to indicate how the assignor summary data was originally created, or how it was maintained. See Dkt. 314-15 (Plfs' Joint Composite Ex. C). Additionally, the assignor declarations fail to indicate whether the data and spreadsheets attached thereto are the data files the assignors originally transferred to plaintiffs. Id.

With respect to plaintiffs' subrogation claim, "Plaintiffs do not have any of the enrollees' Medicare plan enrollment agreements with any of the assignors alleged in this action for any of the 118 alleged claims; and therefore Plaintiffs do not have evidence that any of their assignors in fact have subrogation provisions in their agreements with their enrollees." SUF No. 97. Even though plaintiffs lack this evidence, they claim that their spreadsheet evidence "demonstrates the particular plans for which the Medicare beneficiaries were enrolled," and that "MSP is permitted by express statutory subrogation rights to bring a breach of contract claim against defendants as a matter of law." GDF No. 97.

### C.    The Ownership of Forty-Three Claims by Series 44

Forty-three of plaintiffs' claims are owned by Series 44-20-388, Series 44-20-354, Series 44-20-634, Series 44-20-583, Series 44-20-456 and Series 44-20-931 (collectively, "Series 44"), which are designated series of MSP Recovery Claims Series 44, LLC. SUF Nos. 22-33. Series 44 is a stand-alone LLC, and is not part of or included within plaintiff MSPRC. SUF No. 36; GDF No. 36. Plaintiffs did not own the forty-three claims when

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | Date | May 25, 2022 |
|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | |

they were included in the FAC, and do not own them now. SUF No. 38. However, plaintiffs claim that even though they transferred ownership of the forty-three claims to Series 44, "Fed. R. Civ. P. 25(c) operated to allow MSPRC to continue the action without substituting in Series 44." GDF No. 38.

**D.      The Allegedly Untimely Addition of 56 Claims**

In the FAC, Plaintiffs added 10 new assignment and purchase agreements obtained from May 2017 through August 2019 to assert fifty-six new claims that plaintiffs did not own when they filed this action on March 31, 2017. SUF No. 39. Plaintiffs claim that, even though this is true, the fifty-six added claims relate back to the initial lawsuit because they involve the same "conduct, transaction, or occurrence" as the claims in the initial suit. GDF No. 39.

**E.      The Assignment of 113 Claims to "Series" Entities**

The assignments for 113 of the 118 claims show that the claims were assigned to various "series" entities (i.e., Series 17-03-615), and not to either of the named plaintiffs. See SUF Nos. 41-58. Each of these "series" entities is a designated series of MSPRC, a Delaware series limited liability company. Id. As a result of these assignments to the various "series" entities, defendants claim that "even based on Plaintiffs' own allegations and documents produced, Plaintiffs are not the assignees and do not have the right to sue for 113 claims because the claims are owned by entities which are not named Plaintiffs in this action. Id. No. 58. While plaintiffs do not dispute these assignments to other entities, they claim that MSPRC has standing to sue on behalf of these various "series" entities. See GDF Nos. 41-58.

**F.      The Allegedly Incomplete Assignments for Sixty-Eights Claims**

Defendants claim that "[e]ach of the following assignments and purchase agreements describe the claims and/or rights conveyed by reference to [] other extrinsic items necessary to determine which claims are actually conveyed and which claims are excluded, and Plaintiffs do not have any documents, evidence or any other way to identify the designated or excluded claims: (1) AvMed, Inc.; (2) Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.; (3) Connecticare, Inc.; (4) EmblemHealth Services Company, LLC; (5) Health First Health Plans, Inc.; (6) Medical IPA of the Palm

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

Beaches, Inc.; (7) Preferred Primary Care, LLC; (8) Risk Watchers, Inc. and (9) SummaCare Inc."  SUF No. 59.

For example, the "assignment and purchase agreements with Avmed, Inc. conveyed only the 'claims arising from and relating to the data that Assignor (AvMed) has transferred to MSP Recovery pursuant to that certain Evaluation Agreement effective November 12, 2018 . . . as a result of such parties' failure to pay for health care services provided to any of Assignor's members or enrollees under CMS Contract ID Number H1016,' and excluded: '(i) any of Assignor's right to recover, under any theory, against its network healthcare providers and current and former members, and (ii) Claims belonging to Assignor arising from and related to the GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico.'" Id. No. 60.  However, "Plaintiffs have no documents to show that the 4 claims Plaintiffs allege were assigned and/or sold by AvMed were part of the 'Contract ID Number H1016' and not within a separate CMS Contract ID Number." Id. No. 61.  While plaintiffs contend that they "produced the carve out/subrogation lists on October 6, 2021," GDF No. 61, plaintiffs failed to submit those documents.  See GDF No. 61 (citing Dkt. 314-1 (Declaration of Plaintiffs' counsel David L. DaPonte ("DaPonte Decl")) ¶ 3, which does not attach any evidence).

In total, defendants contend that plaintiffs lack proof that sixty-eight claims were conveyed as part of or were not excluded from eight of the twenty-three assignments on which plaintiffs rely.  See SUF Nos. 59-79.

G.     **The Forty-One Claims Allegedly Assigned to Plaintiffs by MAO-Subcontractor Assignors**

Plaintiffs have asserted forty-one claims in this case allegedly assigned to them by fourteen MAO-subcontractor assignors.  SUF No. 80.  The following alleged assignors are MAO-subcontractors and not Medicare Advantage Organizations or Plans: (1) Family Physicians Group with three claims, (2) Health Care Advisors Services, Inc. with one claim, (3) Hygea Health Holdings, Inc. with one claim, (4) MCCI Group Holdings, LLC with four claims, (5) Medical Consultants Management, LLC with two claims, (6) Medical IPA with three claims, (7) PAUC/PHPG/PAG with one claim, (8) Plum Healthcare, LLC with three claims, (9) Preferred Primary Care, LLC with one claim, (10) Risk Watchers with nine claims, (11) Suncoast Medical Network 2, Inc. with two claims,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

(12) Transatlantic Healthcare with one claim, (13) Trinity Physicians, LLC with three claims, and (14) Verimed IPA, LLC with seven claims. SUF No. 81.

Defendants contend that "Plaintiffs have no evidence that these MAO-subcontractor assignors own the right to seek payment or reimbursement on the claims, including proof that the MAO with which the subcontractor contracted is not vested with the exclusive right to seek or sue for such payment or reimbursement – and thus no proof that these assignors could assign any such rights to Plaintiffs." SUF No. 82. In response, plaintiffs claim that "[t]he Risk Agreements set forth the fact that the downstream assignors are at risk, and the Assignor Data evidence [i.e., the spreadsheets] is evidence of loss sustained by the assignors." GDF No. 82.

In particular, defendants point to agreements that show that Trinity, Medical Consultants Management, LLC, and Verimed IPA, LLC each assigned reimbursement rights to other entities. SUF Nos. 83-85. In response, plaintiffs argue that the "Risk Agreements set forth the fact that the downstream assignors are at risk," and that "[b]ecause MSP's downstream assignors are at risk, they always retain rights under the MSP Act." GDF Nos. 83-85. Additionally, MAO Humana, which owns MCCI Group Holdings, LLC ("MCCI"), sent cease and desist and termination letters to MSP Recovery on August 20, August 24 and again on October 21, 2019, demanding that Plaintiffs "cease and desist pursuing claims" on behalf of MCCI. SUF No. 86.

**H.   The Twenty-Eight Claims from Entities That Do Not Pay Medical Expenses**

Defendants contend that "28 claims of the 118 claims alleged by Plaintiffs in this action are from entities that do not pay medical expenses." SUF No. 92. In response, plaintiffs state that they are "withdrawing [their] claims related to Plum Healthcare Group, LLC." GDF Nos. 87-90. However, plaintiffs maintain that "the claims from Health First Health Plans are viable claims" because "Health First Health Plans executed a nunc pro tunc assignment, which validly assigned the claims at issue in this litigation to MSP's series LLC." GDF No. 92.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

### I.      The Forty-One Claims Wherein the Policy Benefit Limits Had Been Exhausted.

Defendants note that "[t]he policy benefit limits for 41 claims [] had been exhausted (i.e., paid out) prior to the Plaintiffs' or their assignors' attempt to seek any specific payment on December 29, 2020," and therefore argue that "no damages are recoverable on the claims such that they must be dismissed." SUF No. 93. While plaintiffs do not dispute that the benefit limits for those forty-one claims had been exhausted, they argue that "[w]hen Medicare asserts a reimbursement claim, a primary plan cannot use exhaustion of policy limits as a defense." GDF No. 93.

### J.      The Sixty-Four Claims That Involve Florida Insurance Policies

Sixty-four of plaintiffs' 118 claims involve Florida insurance policies governed by Florida law. SUF No. 95. Defendants contend that "Plaintiffs have no evidence that a mandatory pre-suit letter seeking payment with a 30-day cure period prior to any lawsuit, as required under Fla. Statute 627.736(10), was sent to the applicable Defendant for 64 of their Florida no-fault claims, let alone that such letter was sent and the Plaintiffs then waited the 30-day cure period before alleging the claims in this case, and, therefore, the claims must be dismissed." SUF No. 96. In response, plaintiffs argue that "[t]he MSP Act completely preempts any requirement under Florida Statute § 627.736(10) that a pre-suit demand letter be sent to Defendants as condition precedent to litigation." GDF No. 95.

## IV.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out "specific facts showing a genuine issue for trial" in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | Date | May 25, 2022 |
|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | |

"conclusory allegations [in] an affidavit." <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990); <u>see also</u> <u>Celotex</u>, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id.</u> at 322; <u>see also</u> <u>Abromson v. Am. Pac. Corp.</u>, 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. <u>See</u> <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted); <u>Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.</u>, 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.

**V.   DISCUSSION**

42 U.S.C. § 1395y(b)(3)(A) provides "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." Medicare can pay on behalf of a beneficiary if a primary payer "has not made or cannot reasonably be expected to make payment with respect to the item or service promptly[.]" 42 U.S.C. § 1395y(b)(2)(A)(ii). "If an MAO makes such a conditional payment, the Act in turn creates a private right of action allowing the MAO to seek reimbursement from the primary payer who should have made payment in the first place." <u>MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.</u>, 994 F.3d 869, 872 (7th Cir. 2021) (citing 42 U.S.C. § 1395y(b)(3)(A)). "MAOs, like Medicare, can sue primary plans to ensure they are properly reimbursed. But *unlike* Medicare, MAOs must rely on the private cause of action when they sue." <u>MSPA Claims 1, LLC v. Tenet Fla.</u>, Inc., 918 F.3d 1312, 1317 (11th Cir. 2019) (internal citations omitted) (emphasis in original). Three elements must be established to bring a private cause of action under this statute: "(1) a primary plan, (2) that is responsible to pay for an item or service [] (3) that failed to make the appropriate payment to Medicare

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | Date | May 25, 2022 |
|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | |

for the item or service." <u>Glover v. Philip Morris USA</u>, 380 F.Supp.2d 1279, 1290 (M.D. Fla. 2005), aff'd sub nom. <u>Glover v. Liggett Grp., Inc.</u>, 459 F.3d 1304 (11th Cir. 2006).

### A.    Statute of Limitations

Plaintiffs "continue[] to prosecute 96" of the 118 claims alleged in the FAC.  Opp. at 15 n. 7; <u>see also</u> Miranda Decl. ¶ 43.  However, all but two of these claims are barred by the three-year statute of limitations set forth in 42 U.S.C. § 1395y(b)(2)(B)(iii), which is triggered following notice to CMS.[5]  See Dkts. 205, 214; <u>see also</u> Dkt. 289-1.  This is because, for all but two claims, CMS confirmed that it received notice of the claim more than three years before the claim was added to this lawsuit.  Dkt. 289-1.

Plaintiffs do not dispute that the three-year statute of limitations applies, or that all but three claims were reported to CMS more than three years before the claim was added to this lawsuit.  <u>See</u> Opp. at 28-30.  Rather, plaintiffs argue that the relation back doctrine preserves the time-barred claims identified by defendants because they are brought "on the same 'common core of facts' as the claims in MSPs initial complaint."  <u>Id.</u> at 29 (quoting <u>ASARCO, LLC v. Union Pacific R. Co.</u>, 765 F.3d 999, 1004 (9th Cir. 2014)).

The Court disagrees.  "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c).  Here, each of plaintiffs' claims is distinct, featuring a specific Medicare plan making payments on behalf of a specific individual, as a result of injuries specific to that individual.  Additionally, each claim features a different insurance policy, with a particular insurer.  As defendants correctly note, "[t]he only relationship among the claims is that these two Plaintiffs . . . purport to possess the right to try to collect" on them.  Reply at 29.  Plaintiffs provide no authority suggesting that application of the relation back doctrine is appropriate in these circumstances.  Rather, "if a subsequent complaint alleges new claims that are 'distinct in time and place' and excluded from a prior complaint, there is no relation back."  <u>United States v. Scan Health Plan</u>, No. CV 09-5013-JFW (JEMx), 2017 WL 11628884, at *6 (C.D. Cal. Oct. 5, 2017)

---

[5] The two claims that are not time-barred are the K.J and E.R. claims.  <u>See</u> Dkts 287-74; 289-1; 314-15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

(quoting Oja v. United States Army Corps of Eng'rs, 440 F.3d 1122, 1134-35 (9th Cir. 2006).[6]

      Accordingly, the statute of limitations bars all but two claims brought by plaintiffs in the no-fault case.[7]

      **B.**    **Failure of Proof**

      Each of plaintiffs' claims fails because plaintiffs have not put forth any evidence, let alone admissible evidence, showing that plaintiffs' assignors made payments to compensate medical providers for treatment for injuries sustained by Medicare beneficiaries in auto accidents covered by one of the defendants' insurance policies. Plaintiffs do not claim that they have copies of the bills that their assignors received, copies of documents evidencing the payments their assignors made, or even accounting ledgers that would establish whether their assignors made any covered payments related to any of plaintiffs' ninety-six claims. Rather, plaintiffs claim that "any evidence of bills payments, or accounting ledgers would all be found" in the spreadsheets they have attached to the Miranda declaration. GDF No. 4. However, the Court finds that the spreadsheets plaintiffs submitted in opposition to defendants' motion for summary judgment are inadmissible hearsay statements because they allegedly summarize out-of-court statements made by third-parties, namely the assignors, offered to prove the truth of

---

[6] At oral argument and in their supplemental brief, plaintiffs contend that the Court has already found that the individual claims in this case relate back to the date that plaintiffs filed their original complaint. See Plfs' Supp. at 6. However, in the order that plaintiffs appear to be referencing, which is the Court's order on defendants' motion to dismiss the third amended complaint, the Court did not address the relation back doctrine. Instead, the Court explicitly found that, at the motion to dismiss stage, "[t]here [was] no indication that any applicable statutes of limitation have run with respect to plaintiffs' claims." Dkt. 147 at 23. In any event, "[g]iven the different standards for motions to dismiss and motions for summary judgment, courts may (and routinely do) reconsider the same legal arguments at the summary judgment stage." Braden Partners, LP v. Twin City Fire Ins. Co., No. 14-cv-01689-JST, 2017 WL 63019, at *6 (N.D. Cal. Jan. 5, 2017).
[7] Additionally, the Court notes that the A.V. claim, which plaintiffs contend "establishes defendants' liability under the MSP Act," Opp. at 19, is time-barred.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|---|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

the matter asserted, i.e., that payments were made by plaintiffs' assignors for claims that should be reimbursed by defendants.

Plaintiffs argue that "the spreadsheets[] are admissible under Federal Rule of Evidence 803(6), the business records exception to the hearsay rule," and that "[t]he records are separately admissible as adoptive business records under Federal Rule of Evidence 803(6)." Opp. at 13.

With respect to plaintiffs' first argument, the spreadsheets are not plaintiffs' business records, and do not fall within the business records exception to hearsay. The business records exception to hearsay requires that "(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6). Plaintiffs acknowledge that "the spreadsheets . . . are a compilation of Raw Assignor data, Third-Party data, and defendant discovery." GDF No. 4. In other words, the spreadsheets were created during this litigation for purposes of this litigation, and are based on information allegedly obtained from third-parties and the defendants during the discovery period. These spreadsheets are not business records under Rule 803(6), as "[b]usiness records prepared solely for purposes of litigation lack trustworthiness." United States v. Miller, 771 F.2d 1219, 1238 (9th Cir. 1985).

Plaintiffs' second argument, that the spreadsheets are admissible as adoptive business records, fails for the same reason. While "records a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records," MRT Const. Inc. v. Hardrives, Inc., 158 F.3d 478, 483 (9th Cir. 1998), the fact remains that plaintiffs' spreadsheets were created by plaintiffs for the purposes of this litigation, and the other elements of Rule 803(6) have not been established. Furthermore, the spreadsheets lack trustworthiness. In MRT Construction. Inc. v. Hardrives, Inc., which plaintiffs rely upon

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | Date | May 25, 2022 |
|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | |

in support of their argument, the Ninth Circuit admitted "attorney bills generated by [a] law firm," as adoptive business records. Id. at 483. If plaintiffs had direct evidence of bills or payments made by plaintiffs' assignors, that evidence might satisfy the business records exception. However, plaintiffs' spreadsheets, created during litigation, do not suffice.

Plaintiffs' spreadsheets are inadmissible hearsay despite plaintiffs' submission of declarations from some of their assignors. These declarations attach "claims data" as "Exhibit A." See Dkt. 314-15. However, each "Exhibit A" does not appear to have been created by the assignors, as each "Exhibit A" is a spreadsheet of tens or hundreds of pages, containing headings such as "msp_client," "msp_mrd_id," and "msp_crd_batch." See id. at 6. Accordingly, it appears that the claims data attached to the assignor declarations as "Exhibit A" was actually created by plaintiffs. The assignor declarations do not establish that the claims data attached to their declarations as "Exhibit A" was "made at or near the time by . . . someone with knowledge" or "was kept in the course of a regularly conducted activity of a business." See Fed. R. Evid. 803(6). Rather, the opposite appears to be the case, as the assignor declarations acknowledge that the claims data "comes directly from the Data Files that [the assignor] transferred to [plaintiffs]." See, e.g., dkt. 314-15 at 3, 157. In other words, the evidence suggests that each "Exhibit A" was created by plaintiffs from data transferred to plaintiffs, and therefore each "Exhibit A" is not a business record of plaintiffs' assignors. See Sana v. Hawaiian Cruises, Ltd., 181 F.3d 1041, 1046 (9th Cir. 1999) ("Courts are rightfully wary when parties create self-serving documents and seek to offer them as business records.").[8]

_____

[8] At oral argument and in their supplemental brief, plaintiffs contend that each Exhibit A contains the assignors' raw data, and that therefore plaintiffs' spreadsheets are admissible as business records. See Plfs' Supp. at 2-5. The Court reiterates that plaintiffs' argument is belied by the assignor declarations, which each state that "claims data is attached as Exhibit A" and that the "claims data *comes directly from* the Data Files that [the assignor] transferred to [plaintiffs]." See, e.g., Dkt. 314-15 at 431-432 (emphasis added). It is also belied by plaintiffs' supplemental brief, which acknowledges that "the evidence attached to the Miranda and assignor declarations is drawn directly from each assignor's business records." Plfs' Supp. at 3. Tellingly, the assignor declarations never state the spreadsheets are their business records. In sum, it appears each Exhibit A was created by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|----------|------------------------|---|------|--------------|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

Additionally, even if the Court were to consider the spreadsheets, they do not
suffice to raise a triable issue of material fact with respect to one of the three elements for
the private cause of action, i.e., that defendants were responsible for reimbursing
plaintiffs' assignors for the payments contained in plaintiffs' spreadsheets. See Glover,
380 F.Supp.2d at 1290. Plaintiffs' spreadsheets do not establish, for example, the identity
of the recipient of the payments contained therein, that the payments at issue arose from
automobile accidents, or that the payments for which they seek reimbursement were
"conditional" payments. See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto.
Ins. Co., No. 1:17-cv-1537, 2019 WL 6311987, at *7 (C.D. Ill. Nov. 25, 2019), aff'd, 994
F.3d 869 (7th Cir. 2021) (granting summary judgment where "Plaintiff [did] not
demonstrate[] from record evidence that any payment . . . was a 'conditional payment'
under the" Medicare Secondary Payer provisions on the Medicare Act). Plaintiffs must
"prove with evidence, that Defendants' valid insurance contracts actually render
Defendants responsible for primary payment of the expenses Plaintiffs seek to recover."
MSP Recovery, LLC v. Allstate Ins. Co., 835 F.3d 1351, 1361 (11th Cir. 2016).[9]

---

plaintiffs. Crucially, none of plaintiffs' assignors attached the actual "Data Files" they
allegedly sent to plaintiffs. Likewise, plaintiffs did not include the original records from
which they allege they created the spreadsheets attached to the Miranda declaration.
Given these deficiencies, plaintiffs' citation to United States v. Ganesh, No. 16-CR-
00211-LHK, 2018 WL 905941, at *10-11 (N.D. Cal. Feb. 15, 2018), is inapposite. In
that case, the court admitted as business records spreadsheets provided by insurers that
were pulled directly "from their databases of claims data." Id. at *10. Here, plaintiffs
and their assignors have failed to offer the actual Data Files, i.e., the records of
plaintiffs' assignors. Accordingly, while "printouts prepared specifically for litigation
from databases that were compiled in the ordinary course of business are admissible as
business records to the same extent as if the printouts were, themselves, prepared in the
ordinary course of business," U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co., 576 F.3d
1040, 1044 (9th Cir. 2009) (citations and quotations omitted), the spreadsheets here were
not compiled in the ordinary course of business. Rather, they were created by plaintiffs
specifically for the purposes of this litigation, and lack trustworthiness. Therefore,
plaintiffs' spreadsheets do not meet the criteria of Rule 803(6).
[9] The declaration of plaintiffs' expert, Adam E. Block, assistant professor of health policy
& management at New York Medical College School of Health Sciences & Practice, fails

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | Date | May 25, 2022 |
|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | |

Plaintiffs are unable to make this showing with respect to any of their claims, and have failed to raise a genuine issue to permit recovery on either Count I or Count II.[10]

---

to establish that plaintiffs' spreadsheets are business records under Rule 803(6), or that plaintiffs' evidence would be sufficient if the Court were to consider plaintiffs' spreadsheets. See Dkt. 312-1 (Declaration of Adam E. Block). While Block discusses the Medicare program and generally concludes that "claims data is the industry standard in determining whether a medical event happened," id. at 15, Block does not discuss plaintiffs' evidence, including the creation, reliability, or sufficiency of plaintiffs' spreadsheets. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1222 (9th Cir. 1995) (Expert's failure to examine the key evidence "substantially impaired his ability to express a reliable expert opinion based upon specific facts." Accordingly, "the expert opinion . . . [was] not of sufficient quantum or quality to create genuine issues of material fact.").

[10] At oral argument, plaintiffs' counsel discussed and presented evidence from the S.Y. claim in the Settlement Case, arguing that the S.Y. claim exemplifies why summary judgment is inappropriate. See Dkt. 350 (plaintiffs' presentation at May 9, 2022 hearing). The Court disagrees. In addition to plaintiffs' failure to present admissible evidence that SummaCare, Inc., the alleged assignor of the S.Y. claim, made any covered payments for which SummaCare is entitled to reimbursement (see, e.g., id. at 29 (SummaCare explanation of benefits document to S.Y., which shows that the total amount "paid by plan" was $0.00)), the May 12, 2017 assignment from SummaCare "exclude[s] those claims previously identified by other vendors," and the November 3, 2018 assignment from SummaCare "exclude[s] those claims [that] have been identified for pursuit by other subrogation or recovery vendors (including but not limited to Equian) and Pharmacy Benefits Managers (including but not limited to Catalyst RX and Medimpact) and which may have been assigned or relinquished to other vendors for their pursuit." No. 2:17-cv-02559-CAS-PLA, Dkt. 273-34 at 2-3; id., Dkt. 323-1 at 3. Plaintiffs submit the declaration of Melissa Rusk, Vice President of Operations for SummaCare, in which Rusk states that S.Y claim is not carved out from SummaCare's assignments to plaintiffs, and that plaintiffs "ha[ve] the legal title, right, and interests, to pursue recovery of" S.Y.'s claim. Id., Dkt. 290-15 at 432. However, there is no direct evidence that S.Y.'s claim was assigned to plaintiffs, and is not being pursued by other recovery vendors. In sum, plaintiffs have failed to provide any evidence that S.Y.'s claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | Date | May 25, 2022 |
|---|---|---|---|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | |

### C.    Standing

In addition to plaintiffs' failure of proof, summary judgment on each of plaintiffs' claims is required based on plaintiffs' failure to establish standing to sue under Article III or the statutory scheme at issue in this case. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Raines v. Byrd, 521 U.S. 811, 818 (1997). To satisfy constitutional standing requirements, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). An "assignee stands in the shoes of the assignor, and, if the assignment is valid, has standing to assert whatever rights the assignor possessed." Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc., 770 F.3d 1282, 1291 (9th Cir. 2014). To satisfy the "traceability" requirement, there must be a "causal connection between the injury and the actions" about which a plaintiff complains. Easter v. Am. W. Fin., 381 F.3d 948, 961 (9th Cir. 2004). As a general rule, "standing is determined as of the commencement of the litigation." Yamada v. Snipes, 786 F.3d 1182, 1204 (9th Cir. 2015). At the summary judgment stage, a plaintiff must establish "that there is a genuine question of material fact

---

was not previously assigned to entities other than plaintiffs, and there is no direct evidence that demonstrates that S.Y.'s claim was included in the May 12, 2017 and November 3, 2018 assignments from SummaCare to plaintiffs. On summary judgment, the nonmoving party must do more than make "conclusory allegations [in] an affidavit." Lujan, 497 U.S. 871, 888 (1990); see also MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co., No. 6:19-CV-00211 (MAD/TWD), 2019 WL 4222654, at *2, *5 (N.D.N.Y. Sept. 5, 2019) (in a case in which the assignment agreement at issue excluded claims that "have been assigned to and/or are being pursued by other recovery vendors," the court found dismissal appropriate where "[t]here [was] no way to identify whether . . . the exemplar claim [had] been assigned" to the plaintiffs). This failure of proof, coupled with plaintiffs' failure to show that SummaCare made any covered payments for which it is entitled to reimbursement, confirms that plaintiffs have failed to meet their burden to defeat summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02522-CAS-PLAx | | Date | May 25, 2022 |
|----------|------------------------|--|------|--------------|
| Title | MAO-MSO Recovery II, LLC, et al v. The Farmers Insurance Exchange, et al | | | |

as to the standing elements." <u>Cent. Delta Water Agency v. United States</u>, 306 F.3d 938, 947 (9th Cir. 2002).

"Under the Medicare Secondary Payer Act, an assignee has standing to sue if (1) its ultimate assignor . . . suffered an injury-in-fact, and (2) [the assignor's] claim arising from that injury was validly assigned." <u>MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.</u>, 965 F.3d 1210, 1217 (11th Cir. 2020). Here, the Court finds that, at summary judgment, plaintiffs have failed to establish that their assignors suffered any injury-in-fact or have standing to sue under the MSP Act. <u>See Lujan</u>, 504 U.S. at 560 (The elements of standing "must be supported at each stage of litigation in the same manner as any other essential element of the case."). This is because, as discussed, plaintiffs have failed to adduce admissible evidence that the payments for which they seek reimbursement were made to compensate medical providers for the reasonable and necessary treatment of injuries sustained by Medicare beneficiaries in automobile accidents covered by one of defendants' insurance policies. Accordingly, plaintiffs are unable to show that defendants are responsible for reimbursing plaintiffs' assignors for any claims, or that plaintiffs' assignors suffered any injury-in-fact.

Because the Court **GRANTS** summary judgment based on the statute of limitations, plaintiffs' failure of proof, and plaintiffs' lack of standing, the Court need not address defendants' other arguments.

## VI.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendants' motion for summary judgment and **DENIES** plaintiffs' motion for class certification as **MOOT**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |